STATE OF NEBRASKA, APPELLEE, V.
LESTER L. GLANTZ, APPELLANT.

560 N.W.2d 783

Filed March 7, 1997.    No. S-96-396.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and QUIST, D.J.

QUIST, D.J.

A jury found the defendant-appellant, Lester L. Glantz, guilty of attempted burglary and possession of burglar's tools. Glantz was also found to be a habitual criminal. He appeals, contending the district court erred by permitting testimony regarding the actions of a tracking dog into evidence and by improperly instructing the jury.

We transferred the case to this court's docket pursuant to Neb. Rev. Stat. § 24-1106 (Reissue 1995), which permits us to regulate the caseloads of the Court of Appeals and this court. We affirm the decision of the district court.

## ASSIGNMENTS OF ERROR

Restated, Glantz contends the district court erred in (1) allowing the State to introduce evidence that a tracking dog followed a track from the crime scene to Glantz, (2) overruling his objection to the jury instructions used at trial while refusing his proposed jury instructions, and (3) finding the evidence was

sufficient to support the guilty verdicts and therefore overruling his motion to dismiss and motion for directed verdict.

## STANDARD OF REVIEW

If a party fails to make a timely objection to evidence, the party waives the right to assert on appeal prejudicial error concerning the evidence received without objection. *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992); *State v. Rodgers*, 237 Neb. 506, 466 N.W.2d 537 (1991).

To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Traphagan v. Mid-America Traffic Marking, ante* p. 143, 555 N.W.2d 778 (1996); *Kirchner v. Wilson, ante* p. 56, 554 N.W.2d 782 (1996); *State on behalf of Joseph F. v. Rial, ante* p. 1, 554 N.W.2d 769 (1996); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

In determining whether a criminal defendant's motion to dismiss for insufficient evidence should be sustained, the State is entitled to have all of its relevant evidence accepted as true, the benefit of every inference that reasonably can be drawn from the evidence, and every controverted fact resolved in its favor. *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996); *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994).

## FACTS

On September 29, 1995, at approximately 10:30 p.m., an alarm sounded at the Highlands Golf Course clubhouse in Lincoln, Nebraska. The manager of the golf course, Daniel Williams, went to the clubhouse, turned off the alarm, waited for the police, helped search the area, secured the clubhouse, and returned home. At approximately 1 a.m., the alarm at the clubhouse again sounded. Williams went to the golf course, discovered the telephone lines were dead, exited the building, and waited for the police to arrive. Upon their arrival, the police discovered that the telephone lines in the telephone utility box had

been severed. Subsequently, Officer Thomas W. Ward arrived at the clubhouse with his police dog "Gordo." Officer Ward took Gordo to the utility box where the telephone lines had been cut, had Gordo smell the area, and began a track which led north of the box. Gordo led Officer Ward approximately 300 yards from the clubhouse, where two men were lying in the deep rough on the golf course. Officer Ward yelled to the men to show their hands, and after he repeated the command approximately three to five times, the men eventually raised their hands. Glantz' companion raised his hands, and Glantz raised just one hand. Officer Ward continued telling him to raise both hands, and eventually Glantz raised his other hand. Both men were told to stand, and when Glantz stood, an officer noticed tools in the matted area of the grass where the two men had been lying. The tools were identified as aviation snips and wirecutters. Other officers then searched in a nearly straight line back to the clubhouse, finding a flashlight and a pair of gloves. In addition, a greasy substance that had been discovered on the telephone utility box and on the door of the clubhouse was also found on the aviation snips and wirecutters.

Before the trial, Glantz filed a motion in limine, requesting the court prohibit the prosecution from discussing Gordo's actions with respect to the investigation of this case. The motion was overruled. As a result, during the trial, Officer Marlin Hohnstein testified to Gordo's actions at the clubhouse and on the golf course, including his track from the cut telephone wires to the location of Glantz. Glantz made a continuing objection to Officer Hohnstein's testimony, stating he objected to "any interpretation of what the dog did while the dog was there."

At the close of the trial, over Glantz' objection, the court gave instruction No. 6, which was patterned after NJI2d Crim. 3.8, on aiding and abetting. Instruction No. 6 did not include the statement that mere presence is not enough to establish guilt for aiding and abetting. As alternatives, Glantz offered proposed jury instructions Nos. 1 and 2, which did state that mere presence at the scene of a crime is not sufficient to establish guilt. The court refused to give Glantz' proposed instructions.

The jury returned a verdict, finding Glantz guilty of attempted burglary and possession of burglar's tools. Glantz'

motion for a new trial was denied, and he was found to be a habitual criminal. This appeal followed.

## ANALYSIS

Glantz contends the district court erred in allowing the State to introduce evidence that Gordo followed a track from the scene of the crime to Glantz' location on the golf course. However, the record reflects that Glantz failed to make a timely objection to the State's offer of police testimony relating Gordo's actions on the golf course.

During the trial, Officer Hohnstein was questioned about Gordo's behavior at the clubhouse. Glantz objected to the question. At a side bar, Glantz stated that it was his intention to make a continuing objection to any *interpretation* of what Gordo did while he was at the clubhouse. The court inquired as to exactly what the officer was being asked by the prosecutor. The prosecutor answered that all he asked Officer Hohnstein was to describe Gordo's actions at the golf course. When asked if this was acceptable, Glantz' attorney responded, "Okay." If a party does not make a timely objection to evidence, the party waives the right to assert on appeal prejudicial error concerning the evidence that was received without objection. *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Coleman*, 241 Neb. 731, 490 N.W.2d 222 (1992); *State v. Rodgers*, 237 Neb. 506, 466 N.W.2d 537 (1991). The Nebraska rules of evidence state that error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected and a timely objection stating the specific ground of objection was made. Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1995). Glantz specifically objected to any testimony that *interpreted* Gordo's actions. Glantz did not object to testimony describing Gordo's actions. There was no objection to testimony stating what the officers *saw* Gordo do at the scene. Therefore, it is clear from the record that Glantz did not object to the testimony on Gordo's *actions* while tracking at the golf course. Absent such an objection at trial, Glantz waived his right to raise the issue on appeal.

Glantz contends the district court erred in overruling his objections to the court's jury instruction on aiding and abetting

and by refusing to give his requested instructions. To establish reversible error from a court's failure to give a requested instruction, an appellant has the burden of showing that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the tendered instruction. *Traphagan v. Mid-America Traffic Marking,* ante p. 143, 555 N.W.2d 778 (1996); *Kirchner v. Wilson, ante* p. 56, 554 N.W.2d 782 (1996); *State on behalf of Joseph F. v. Rial, ante* p. 1, 554 N.W.2d 769 (1996); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

Glantz claims instruction No. 6 given by the trial court did not instruct the jury that mere presence at the scene of a crime is insufficient to establish guilt for the crime of aiding and abetting.

As a general rule, in giving instructions to the jury, it is proper for the court to describe the offense in the language of the statute. *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995); *State v. Friend*, 230 Neb. 765, 433 N.W.2d 512 (1988). The Nebraska statute on prosecuting for aiding and abetting, Neb. Rev. Stat. § 28-206 (Reissue 1995), states: "A person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender."

To abet means to encourage or to assist. Black's Law Dictionary 5 (6th ed. 1990).

In giving instructions to the jury in Glantz' case, the district court used NJI2d Crim. 3.8 to give instruction No. 6, which states:

> The Defendant can be guilty of attempted burglary even though he personally did not commit any act involved in the crime so long as he aided someone else to commit it. The defendant aided someone else if:
>
> 1. The defendant encouraged or intentionally helped another person to commit the attempted burglary; and
>
> 2. The defendant knew that the other person intended to commit the attempted burglary; and
>
> 3. The attempted burglary in fact was committed by that other person.

We conclude NJI2d Crim. 3.8 accurately describes the offense of aiding and abetting in terms of the statutory language of § 28-206.

The Nebraska Supreme Court rule relating to the use of the Nebraska Jury Instructions is as follows: "(a) Nebraska Jury Instructions, Second Edition (NJI 2d), is designed for use when the instruction correctly states the law and the pleadings and evidence call for such an instruction. Where applicable, a trial judge may utilize an appropriate NJI instruction." Neb. Ct. R. Regarding Nebraska Jury Instructions (rev. 1996). In the present case, the Nebraska Jury Instructions did contain an applicable instruction, the court correctly determined the jury should be instructed on the subject, and the instruction from the Nebraska Jury Instructions was properly used.

To determine whether jury instructions create prejudicial error, they must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. White*, 249 Neb. 381, 543 N.W.2d 725 (1996); *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996); *State v. Neujahr, supra.* It is evident that NJI2d Crim. 3.8 correctly states the law; the instruction essentially repeats the statute.

Similarly, there is no showing that the instruction did or would mislead the jury. Instructions Nos. 5 and 8 informed the jury that before it could convict, it must find beyond a reasonable doubt that Glantz intended to burglarize the clubhouse. The instructions made it clear to the jury that an individual must intend that his actions assist in a crime in order to be guilty of aiding and abetting. This intent requirement sufficiently informed the jury that an individual not at all involved in the crime yet at the scene could not be found guilty of aiding and abetting.

An instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given. *State v. Samuels*, 205 Neb. 585, 289 N.W.2d 183 (1980). Glantz proposed jury instructions which read as follows:

[Proposed Jury Instruction No. 1]

You are instructed that mere presence at the commission of a crime without aiding, abetting or procuring its commission with unlawful intent, is not sufficient to establish the guilt of such party, and even though you may

believe from the evidence beyond a reasonable doubt that Jeff Walters may have attempted to commit a burglary at the time and place alleged, and that the defendant was present at the time, yet, before you could find the defendant guilty of the crime charged herein you must be convinced by the evidence beyond a reasonable doubt among other things, that the defendant formed and shared with said Jeff Walters a common felonious intent and plan to commit burglary and assist therein. If you entertain a reasonable doubt thereto, then you should give the defendant the benefit of such doubt and acquit him of the charge made.

[Proposed Jury Instruction No. 2]

You are instructed that mere presence at the location of an alleged crime is not sufficient to establish the guilt of such party. Before you could find the defendant guilty of the crimes charged herein you must be convinced by the evidence beyond a reasonable doubt that the defendant formed a felonious intent and plan to commit burglary. If you entertain a reasonable doubt thereto, then you should give the defendant the benefit of such doubt and acquit him of the charge made.

Glantz' contention that absent his proposed instructions the jury would not understand that his mere presence at the clubhouse was not sufficient to find him guilty of aiding and abetting is unfounded. As previously discussed, the jury instructions fully informed the jury of the statutory elements of aiding and abetting. Furthermore, it is impossible for jury instructions to include everything that does *not* constitute aiding and abetting. Requiring the court to inform the jury of all actions that do not constitute a crime would be impossible and inefficient; in addition, an attempt to list many actions that do not amount to a criminal act would be misleading and confusing to a jury. We reject Glantz' argument, which, when followed to its logical conclusion, makes any jury instruction insufficient unless it informed the jury of every action that would *not* constitute a crime. For the aforementioned reasons, we conclude Glantz suffered no prejudice as a result of the instructions given or by the court's refusal to use his proposed instructions.

Glantz claims it was error for the district court to overrule his motion to dismiss and motion for directed verdict, arguing the evidence was not sufficient to support the guilty verdicts. An examination of the record reveals that there was sufficient evidence to convict Glantz of aiding and abetting. In determining whether a criminal defendant's motion to dismiss for insufficient evidence should be sustained, the State is entitled to have all of its relevant evidence accepted as true, the benefit of every inference that reasonably can be drawn from the evidence, and every controverted fact resolved in its favor. *State v. Lopez*, 249 Neb. 634, 544 N.W.2d 845 (1996); *State v. McDowell*, 246 Neb. 692, 522 N.W.2d 738 (1994). Accepting the relevant evidence as true, the facts show that Glantz was hiding on the golf course at 1:30 a.m. after an alarm had sounded in the clubhouse, that the clubhouse telephone wires were cut and wirecutters and aviation snips were found in the area where Glantz was hiding, that Glantz was slow to show his hands to the police officer, and that the same greasy substance that appeared on the clubhouse door appeared on the tools. We must give the State the benefit of every inference that can reasonably be drawn from the evidence. A thorough review of the record with reasonable inferences given to the State reveals there was sufficient evidence to convict Glantz of aiding and abetting. There being no error in the jury instructions and sufficient evidence to support the verdicts, the district court's judgment is affirmed.

AFFIRMED.