Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/16/2024 09:10 AM CDT

State of Nebraska, appellee, v.
Jmaun D. Haynie, appellant.
___ N.W.3d ___

Filed August 16, 2024.    No. S-23-342.

1. **Motions for Mistrial: Appeal and Error.** An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.
2. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
3. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
4. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.
5. **Motions for Mistrial: Proof: Appeal and Error.** To prove error predicated on the failure to grant a mistrial, the defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.
6. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted

by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

7. **Jury Instructions: Appeal and Error.** It is not error for a trial court to refuse to give a party's requested instruction where the substance of the requested instruction was covered in the instructions given.

8. **Criminal Law: Jury Instructions.** When there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that instruction to the jury in a criminal case.

9. **Jury Instructions.** An instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given.

10. **Homicide: Intent: Presumptions.** The critical difference between felony murder and premeditated first degree murder is that the underlying felony takes the place of the intent to kill, or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intent required for the underlying felony.

11. **Criminal Law: Aiding and Abetting: Intent: Liability.** When a crime requires the existence of a particular intent, an alleged aider or abettor can be held criminally liable as a principal if it is shown that the aider and abettor knew that the perpetrator of the act possessed the required intent or that the aider and abettor himself or herself possessed such intent.

12. **Criminal Law: Evidence: Intent.** The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.

Appeal from the District Court for Douglas County, James M. Masteller, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Leslie E. Cavanaugh for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## INTRODUCTION

Jmaun D. Haynie appeals his convictions in the district court for Douglas County, Nebraska, of first degree murder,

second degree assault, and two counts of use of a firearm to commit a felony. Haynie argues that the district court should have granted a mistrial due to an "outburst" by the mother of one of the victims, coupled with a spectator's wearing a T-shirt memorializing the same victim.[1] Haynie also argues that the district court was required to poll the jurors about whether the display of the T-shirt affected their ability to be impartial and admonish them to disregard such displays. In addition, Haynie argues that his proposed jury instruction about aiding and abetting should have been given and that the evidence was insufficient to support his murder conviction. Finding no error, we affirm.

## BACKGROUND

### SHOOTINGS IN CONNECTION WITH DRUG DEAL

On September 12, 2021, law enforcement officers responding to a 911 emergency service dispatch call found Franco Vasquez and Haley Grim inside Grim's vehicle in a parking lot in Omaha, Nebraska. Both had been shot. Vasquez was pronounced dead at the scene, but Grim survived.

Officers at the scene also found bags of marijuana in and around the vehicle and elsewhere in the parking lot. In addition, a digital scale of the type commonly used in drug sales was found near one of the bags of marijuana.

Law enforcement also discovered a firearm magazine, two fired cartridge casings, and a bullet inside the vehicle. Based in part on this evidence, it was ultimately determined that two firearms were fired inside the vehicle.

### EVIDENCE LINKING HAYNIE TO SHOOTINGS

Grim's and Vasquez' cell phones were recovered from the vehicle. Vasquez' phone included text messages between

---

[1] Brief for appellant at 14.

Vasquez and a phone number belonging to Haynie sent on the day of the shootings. In those messages, Vasquez made comments that officers understood to mean that he had marijuana for sale. Haynie responded with an apparent inquiry about the price and eventually agreed to buy 1½ pounds of marijuana from Vasquez for $3,600. Haynie later texted Vasquez that he was waiting in the parking lot. Vasquez replied that he had returned to his residence to retrieve the marijuana, but that he would be there soon. Vasquez then asked whether Haynie had the money. Haynie, in turn, asked if Vasquez wanted to see the money to which Vasquez responded that he did not.

Evidence of Haynie's DNA was also discovered on the vehicle.

## Criminal Charges

Haynie was arrested approximately 2 weeks after the shootings and charged with first degree murder in the death of Vasquez, second degree assault in the shooting of Grim, and two counts of use of a firearm to commit a felony. The murder charge alleged that Haynie killed Vasquez with deliberate or premediated malice or killed him during the perpetration of or while attempting to perpetrate a robbery. The parties refer to the theory that Vasquez was killed during a robbery as "felony murder," and we adopt that shorthand here.

Haynie pled not guilty to each count, and the matter proceeded to trial.

## Testimony at Trial

The trial included testimony from 16 witnesses and over 200 exhibits. Some evidence adduced at trial was set forth above. Other evidence is summarized below. Yet other evidence is discussed later in the opinion as it relates to the arguments on appeal.

The surviving victim, Grim, was a key witness for the State and the primary source of information regarding the events of September 12, 2021. Grim testified that earlier that

day, she drove Vasquez around Omaha for several drug deals involving small amounts of marijuana. Grim testified that Vasquez conducted those sales in his usual manner, which was "through the window" of the vehicle and without having buyers get into the vehicle. Grim also testified that later on September 12, she was with Vasquez in his residence and saw him measure out an unusually large quantity of marijuana.

According to Grim, she then drove Vasquez to the parking lot where they were to meet Haynie. Grim testified that once in the parking lot, a man came over to her vehicle and got into the back seat behind Vasquez. Grim testified that this felt "weird, because that's not how it usually goes." Grim testified that this man then signaled to another man, who came over to the vehicle and got into the back seat behind her. Subsequently, the first man was identified as Haynie and the second man as Izayah Mapp. On appeal, Haynie does not dispute that he was one of the men who entered the vehicle.

Grim testified that Vasquez showed the men a bag containing the marijuana and asked for the money. Grim testified that both men then pulled out guns. Grim testified that the man identified as Haynie told Vasquez, "'Don't make me shoot you in front of her,'" and that both men "started reaching forward, trying to pull for the bag." Grim testified that Vasquez directed her to "'[d]rive.'" Grim testified that while she drove, the man identified as Mapp grabbed the back of her clothing and "started hitting [her] with the bottom of his gun." Grim testified that the vehicle crashed into a pole and that she looked at Vasquez to discover "he had blood all over him and he wasn't really breathing." Grim testified that the men left, but that she did not see them leave. According to Grim, neither she nor Vasquez had a gun.

An officer with the Omaha Police Department testified about social media messages exchanged between Haynie and his girlfriend. In one message, sent approximately 1½ hours after the shootings, Haynie stated that he "'fucked up and [was] scared.'" Several days later, after officers took a DNA

sample from him, Haynie sent another message stating that "[t]hey caught me." Thereafter, Haynie sent a message stating that he was considering "'tryna hit another L.'" The officer testified that "L" was short for "lick," or robbery, and that he understood Haynie to be stating that he was contemplating another robbery.

### Allegedly Prejudicial Incidents During Trial

While witnesses were testifying during the trial, there were two separate incidents that Haynie claims prejudiced him. First, Vasquez' mother was heard making "remarks" from the gallery before she left the courtroom. The judge and counsel for the parties heard her speaking, but apparently not her actual words. However, Haynie's family members reported to counsel that as Vasquez' mother was exiting the courtroom, she "threatened to shoot them . . . in the face." The judge also observed that the door slammed as the mother left, but that the door "sometimes slam[med] unintentionally."

Based on this incident, Haynie's counsel asked the district court, outside the presence of the jury, to "excuse" Vasquez' mother from the remainder of the trial. Counsel for the State responded that Vasquez' mother would likely want to continue to attend. The court prohibited Vasquez' mother from returning that day and required that she "have a conversation" with the court to ensure there were not "any repeats" if she wanted to attend in the future. The court also instructed the deputies to escort out of the courtroom anyone whom they heard or observed to be making comments and not allow them to reenter that day.

Later the same day, Haynie's counsel observed a person crying in the front row of the gallery who, upon removing her coat, wore a T-shirt with Vasquez' "picture" on it, as well as words like "'In Memory'" or "'Rest in Peace, Franco Vasquez.'" Outside the presence of the jury, Haynie's counsel argued that because this was the second such incident and he

"[didn't] know what the jurors have seen," a mistrial was warranted based on the "potential undue influence" of Vasquez' family on the jurors. The State countered that a mistrial was "not necessary" because there was no evidence that the jurors saw the T-shirt or that there was any prejudice. The State also indicated that it "advised" the person wearing the T-shirt after the T-shirt was brought to the State's attention.

The district court overruled the motion for a mistrial but instructed the deputies to exclude persons wearing memorial T-shirts or buttons. The court did not address the incidents with the jury when the jury returned. However, when the matter was subsequently submitted to the jury, the jurors were instructed "not [to] allow sympathy or prejudice to influence [their] verdict."

## Jury Instructions and Convictions

At a jury instruction conference, the parties and the court discussed, among other things, the language regarding aiding and abetting. The district court proposed the following instruction:

The [d]efendant can be guilty of a crime even though he personally did not commit every act involved in the crime so long as he aided someone else to commit it. The [d]efendant aided someone else if:

(1) The [d]efendant intentionally encouraged or intentionally helped another person to commit the crime; and

(2) The [d]efendant intended that the crime be committed; or the [d]efendant knew that the other person intended to commit the crime; and

(3) The crime in fact was committed by that other person.

The [d]efendant can be guilty of Murder in the First Degree (Felony Murder) if he is guilty of robbery as an aider and a death resulted during the course of committing the robbery.

Haynie asked that language be added to the instruction "from" *State v. Ramsay*[2] and *State v. Warrack*.[3] Haynie's proposed language would have stated that "[e]vidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving guilt beyond a reasonable doubt." The State objected to this language because it was not included in the Nebraska Jury Instructions, among other things. The district court declined to include the proposed language, and the case was submitted to the jury with the language regarding aiding and abetting quoted above.

The jury unanimously voted to convict Haynie on all counts.

### SENTENCING AND APPEAL

Following the jury verdicts, Haynie was sentenced to consecutive terms of life imprisonment for first degree murder, 10 to 20 years' imprisonment for assault, and 15 to 25 years' imprisonment for each count of use of a firearm to commit a felony.

Haynie timely appealed his convictions and sentences. Because he was sentenced to life imprisonment on the murder conviction, Haynie's appeal was docketed directly in this court as provided by Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2022).

## ASSIGNMENTS OF ERROR

Haynie, assigns, restated, that the district court erred in (1) denying his motion for mistrial after the incidents with Vasquez' mother and the T-shirt, (2) not polling the jurors to determine whether the display of the T-shirt affected their ability to be impartial and not admonishing them to disregard that display, and (3) failing to give the proposed jury instruction regarding aiding and abetting. Haynie also

---

[2] *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999).

[3] *State v. Warrack*, 21 Neb. App. 604, 842 N.W.2d 167 (2014), *disapproved on other grounds, State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

assigns, restated, that the evidence was insufficient to support his murder conviction.

## STANDARD OF REVIEW

[1] An appellate court will not disturb a trial court's decision whether to grant a motion for mistrial unless the trial court has abused its discretion.[4]

[2] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[5]

[3] In reviewing a criminal conviction for sufficiency of the evidence, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[6] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[7]

## ANALYSIS

### NO ERROR IN DENYING MOTION
### FOR MISTRIAL

Haynie's first assignment of error concerns the denial of his motion for a mistrial based on the "outburst" by Vasquez' mother and the T-shirt memorializing Vasquez.[8] Haynie suggests that under *State v. Iromuanya*,[9] such conduct was "inherently prejudicial" to his right to a fair trial or posed an

---

[4] *State v. Vaughn*, 314 Neb. 167, 989 N.W.2d 378 (2023). See, also, *State v. Garcia*, 315 Neb. 74, 994 N.W.2d 610 (2023).

[5] *State v. Npimnee*, 316 Neb. 1, 2 N.W.3d 620 (2024).

[6] *Id.*

[7] *Id.*

[8] Brief for appellant at 14.

[9] *State v. Iromuanya*, 282 Neb. 798, 806 N.W.2d 404 (2011).

"unacceptable threat of impermissible factors coming into play" in the jury's verdict.[10] Haynie claims that the "display of rage" by Vasquez' mother, coupled with the T-shirt's "appeal [for] sympathy," "could well" have influenced the jury verdicts against him.[11] The State counters that there is no evidence that the jurors observed the "outburst" or the T-shirt. The State also argues that both occurrences were of short duration and were promptly remedied by the district court.

[4,5] A mistrial is properly granted in a criminal case where an event occurs during the course of trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[12] Decisions regarding motions for mistrial are directed to the discretion of the trial court.[13] To prove error predicated on the failure to grant a mistrial, the defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[14]

Haynie failed to meet that burden because he failed to show he was actually prejudiced by the displays.[15] The record indicates that both incidents occurred while witnesses for the State were testifying, and the jurors were presumably present. However, there is nothing indicating that any juror

---

[10] Brief for appellant at 14 (internal quotation marks omitted) (quoting *Iromuanya*, *supra* note 9).

[11] Brief for appellant at 15.

[12] *Vaughn, supra* note 4.

[13] *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023). See, also, *Garcia, supra* note 4 (deference to trial court's rulings on motions for mistrial and for new trial stems in part from recognition that trial judge is better situated than reviewing court to pass on questions of witness credibility and circumstances and atmosphere of trial).

[14] *Vaughn, supra* note 4.

[15] Cf., *Hammond v. Commonwealth*, 504 S.W.3d 44, 51 (Ky. 2016) ("[s]ince we cannot conclude with any assurance of accuracy that any jurors actually saw the messages, we cannot say that Appellant suffered actual prejudice"); *Wright v. State*, 276 Ga. 419, 577 S.E.2d 782 (2003) (similar).

observed the "outburst" or T-shirt or heard the threat. Instead, the record shows only that (1) counsel for the parties and the judge heard Vasquez' mother making "remarks," but could not make out what she said; (2) Haynie's family informed his counsel that as Vasquez' mother left the courtroom, she threatened to shoot them in the face; and (3) one of Haynie's attorneys observed a spectator crying in the front row of the gallery who, upon taking off her coat, wore a T-shirt memorializing Vasquez. That is the extent of the record as to the "outburst" and T-shirt.

Haynie's suggestion that even absent evidence of actual prejudice, the conduct here should nonetheless be seen as "inherently prejudicial" or as posing an "unacceptable risk" of prejudice is similarly unavailing under *Iromuanya*.[16] The defendant in *Iromuanya* sought postconviction relief in part on the ground that his trial counsel was ineffective in failing to timely object to the victims' family members wearing memorial buttons and demand an immediate ruling on his objection or a mistrial. In discussing that claim, we observed that "'certain procedures, such as compelling the defendant to attend trial in visible shackles, gagged, or in recognizable prison clothing, [are] "inherently prejudicial" to the defendant's right to a fair trial.'"[17] However, we also made clear that spectator conduct is "not per se inherently prejudicial" because it is "not on the same level as state-sponsored procedures."[18]

Instead, we explained that other courts had adopted an "'unacceptable risk'" standard for spectator conduct and had concluded that wearing buttons or T-shirts "did not pose an unacceptable threat to a fair trial, especially when they were worn for only a short period and the trial court stopped

---

[16] See *Iromuanya, supra* note 9.

[17] *Id*. at 825, 806 N.W.2d at 430 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986)).

[18] *Id*. at 827, 806 N.W.2d at 432.

the practice shortly after being informed of it."[19] We then applied that "'unacceptable risk'" standard to conclude that the defendant in *Iromuanya* failed to show he was prejudiced by his trial counsel's allegedly deficient performance because the spectators wore memorial buttons only for the first 2 or 3 days of a 9-day trial, and the court instructed the jurors not to allow sympathy or prejudice to influence their verdict.[20] "Under these facts," we declined to "presume juror partiality."[21]

We find *Iromuanya* to be dispositive as to Haynie's suggestion of inherent prejudice or unacceptable risk. The conduct in question is not alleged to have been state sponsored.[22] The conduct was individually and collectively brief in duration. Both the "outburst" and the display of the T-shirt occurred on the same morning of 1 day in a multiday trial.[23] The trial court stopped both practices upon becoming aware of them.[24] The court barred Vasquez' mother from returning that day and imposed conditions on her return in the future. The court also instructed the deputies to remove anyone making comments or wearing memorial T-shirts or buttons. In addition, the court instructed the jurors "not [to] allow sympathy or prejudice to influence [their] verdict."

---

[19] *Id*. at 827, 828, 806 N.W.2d at 432.

[20] *Id*. at 827, 806 N.W.2d at 432.

[21] *Id*. at 828, 806 N.W.2d at 432.

[22] Cf., *U.S. v. Farmer*, 583 F.3d 131 (2d Cir. 2009) (T-shirts with victim's photograph not inherently prejudicial); *State v. Paige*, 375 S.C. 643, 654 S.E.2d 300 (S.C. App. 2007) (refusal to order spectators to remove buttons with victim's photograph not inherently prejudicial); *State v. Lord*, 161 Wash. 2d 276, 165 P.3d 1251 (2007) (en banc) (buttons with victim's picture not inherently prejudicial).

[23] Cf., *State v. Thompson*, 378 So. 3d 784 (2023) (La. App. 2023) (T-shirts only visible to jury for about 1 hour); *People v. Lopez*, No. B212781, 2010 WL 1174613 (Cal. App. Mar. 29, 2010) (T-shirts briefly visible).

[24] Cf. *Wright, supra* note 15 (court forbade those wearing T-shirts from entering courtroom).

As to Haynie's argument that a T-shirt is "much more noticeable when worn in the front row of a public gallery" than "mere button[s]" and that the "outburst" by Vasquez' mother highlighted the T-shirt by drawing attention to the gallery,[25] we reiterate that there was no evidence the jurors saw any of this.

Because there was no evidence that the jurors observed the "outburst" or the T-shirt, and because the displays were not inherently prejudicial and did not pose an unacceptable risk of prejudice under *Iromuanya*, the district court did not abuse its discretion in overruling Haynie's motion for a mistrial.

### No Error in Not Polling Jury and Not Admonishing Jury After Spectator Wore T-Shirt Memorializing Vasquez

Haynie's second assignment of error also concerns the memorial T-shirt. Haynie argues that under *Iromuanya*, the district court was required to poll the jurors to determine whether the display of the T-shirt affected their ability to be impartial and to admonish the jurors to disregard such displays. Haynie claims that "the court's failure to adhere to [these] requirements . . . resulted in reversible error,"[26] in part because absent polling of the jurors, he had "no ability to effectively argue and protect his right against inappropriate influence."[27] The State, on the other hand, argues that *Iromuanya* does not require that the jurors be polled and admonished. The State also observes that Haynie failed to ask the district court to take such actions.

As was previously noted, our opinion in *Iromuanya* addressed, among other things, the defendant's argument that his trial counsel was ineffective in the timing of his objection to memorial buttons and in not demanding an immediate

---

[25] Brief for appellant at 14.

[26] *Id*. at 15.

[27] *Id*. at 16.

ruling on his objection or a mistrial.[28] We rejected that claim, but advised trial courts to take specific steps to address spectator conduct that could prejudice the defendant's right to a fair trial. We advised, "If the court concludes that jurors would have been exposed to the displays, it should inquire of jurors whether the displays would affect their ability to be impartial and admonish them to disregard any displays to which they might have been exposed."[29] It is this language regarding polling and admonishing the jury that Haynie relies upon in his second assignment of error.

Haynie's reliance is misplaced for several reasons. First, the language in *Iromuanya* upon which he relies is dicta. It appears after this court had already concluded that the defendant's right to a fair trial was not violated and was framed as guidance "[t]o avoid potential prejudice from victim memorial displays . . . ."[30] We do not understand that language Haynie relies upon to establish a rule, the failure of which to follow amounts to reversible error. Second, *Iromuanya* recommends that the jury be polled and admonished "[i]f the court concludes that jurors would have been exposed to the displays . . . ."[31] However, as was noted above, there is nothing in the record here to show that jurors saw the T-shirt.

We also note, as the State did, that Haynie never asked the district court to poll and admonish the jurors. Haynie may have mistakenly believed that the court was required to take such actions sua sponte. But that does not excuse his failure to raise the issue when the court did not take the actions that he believed to be required.[32] As we have previously

---

[28] *Iromuanya, supra* note 9.

[29] *Id*. at 829, 806 N.W.2d at 433.

[30] *Id*. at 828, 806 N.W.2d at 432.

[31] *Id*. at 829, 806 N.W.2d at 433.

[32] See, e.g., *State v. McClanahan*, 194 Neb. 261, 231 N.W.2d 351 (1975) (superseded by statute on other grounds as stated in *State v. McLain*, 238 Neb. 225, 469 N.W.2d 539 (1991)); *Barber v. State*, 75 Neb. 543, 106 N.W. 423 (1906).

explained, a defendant who might otherwise be entitled to an admonishment may opt not to request one so as not to "'highlight[] the issue for the jury.'"[33] The approach suggested by Haynie would effectively remove defendants' right to make such determinations on their own behalf by requiring that the court sua sponte admonish the jurors on certain matters. We decline to adopt such an approach to polling and admonishing the jury based on spectator conduct.

Accordingly, because *Iromuanya* does not require the district court sua sponte to poll the jurors about the memorial T-shirt and admonish them to disregard the display, and because Haynie did not request the district court to take such actions, the district court did not err in failing to poll the jurors and admonish them.

## No Error in Declining to Give Requested Jury Instruction

Haynie's third assignment of error concerns the failure to give his proposed jury instruction regarding aiding and abetting. As is discussed below, Haynie challenges the sufficiency of the evidence of robbery, the crime during which Vasquez was killed. Haynie suggests that there was no evidence of robbery or that Mapp alone was responsible. As such, Haynie argues that his proposed instruction was necessary to ensure that the jury did not find him guilty merely because he was at the scene and "acquiesc[ed] in whatever Mapp chose to do inside the car."[34] The State counters that the jury instruction given followed the Nebraska Jury Instructions, correctly stated the law, and "already prohibited the jury from finding Haynie guilty merely because he was present at the scene of the crime."[35]

---

[33] *State v. Dixon*, 282 Neb. 274, 286, 802 N.W.2d 866, 880 (2011).

[34] Brief for appellant at 18.

[35] Brief for appellee at 15.

[6,7] To establish reversible error from a court's refusal to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.[36] It is not error for a trial court to refuse to give a party's requested instruction where the substance of the requested instruction was covered in the instructions given.[37]

[8] Haynie failed to meet that burden here. As we have previously explained, when there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that instruction to the jury in a criminal case.[38] The district court here did precisely that, basing its instruction on NJI2d Crim. 3.8.

Moreover, in *State v. Glantz*,[39] we found that the language in NJI2d Crim. 3.8 adequately addressed concerns like those raised by Haynie here. The defendant in *Glantz* argued that the district court erred, among other things, in refusing to include in the jury instruction regarding aiding and abetting a "statement that mere presence is not enough to establish guilt."[40] We disagreed.[41] We found that the instruction in question was based on NJI2d Crim. 3.8 and that NJI2d Crim. 3.8 accurately described the offense of aiding and abetting set forth in statute.[42] We also observed that NJI2d Crim. 3.8 provides, among other things, that "'[t]he defendant aided someone else if: 1. The defendant encouraged or intentionally

---

[36] *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024).

[37] *Id*.

[38] *Id*.

[39] *State v. Glantz*, 251 Neb. 947, 560 N.W.2d 783 (1997).

[40] *Id*. at 950, 560 N.W.2d at 786.

[41] *Glantz, supra* note 39.

[42] *Id*. See Neb. Rev. Stat. § 28-206 (Reissue 2016).

helped another person commit the [offense]; and 2. The defendant knew that the other person intended to commit the [offense].'"[43] We found that this "intent requirement sufficiently informed the jury that an individual not at all involved in the crime yet at the scene could not be found guilty of aiding and abetting."[44] Further, we found that the proposed instruction regarding "mere presence" would have confused and misled the jury because "it is impossible for jury instructions to include everything that does not constitute aiding and abetting."[45]

[9] In light of *Glantz* and subsequent cases, the district court did not err in declining to give Haynie's proposed jury instruction. The jury instruction given was based on NJI2d Crim. 3.8, which has not changed in relevant part between *Glantz* and the present appeal; it correctly stated the law; and its provisions regarding intent covered the substance of the proposed instruction. In contrast, the proposed instruction would have confused and misled the jury for the reasons set forth in *Glantz*. An instruction which does not correctly state the law or which is likely to confuse or mislead the jury should not be given.[46]

Haynie is correct that we used his proposed language about "mere presence, acquiescence, or silence" in *Ramsay* and related cases.[47] However, we use that language when summarizing the law as to aiding and abetting. There was no suggestion that this language was, or should be, included in jury instructions.

---

[43] *Glantz, supra* note 39, 251 Neb. at 952, 560 N.W.2d at 787.

[44] *Id*. at 953, 560 N.W.2d at 787.

[45] *Id*. at 954, 560 N.W.2d at 788 (emphasis omitted).

[46] *State v. Gales*, 269 Neb. 443, 694 N.W.2d 124 (2005).

[47] See *Ramsay, supra* note 2. See, also, *State v. Larsen*, 255 Neb. 532, 586 N.W.2d 641 (1998); *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998).

### EVIDENCE WAS SUFFICIENT TO SUPPORT
### FELONY MURDER CONVICTION

In his fourth assignment of error, Haynie argues that the evidence was insufficient to support his conviction for felony murder because there was no evidence that he "intended to rob Vasquez"[48] or "knew of Mapp's intent to rob or attempt to rob" Vasquez.[49] The State, in contrast, argues that the evidence was sufficient to support Haynie's felony murder conviction.

[10] The critical difference between felony murder and premeditated first degree murder is that the underlying felony takes the place of the intent to kill, or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intent required for the underlying felony.[50] In other words, a specific intent to kill is not required to constitute felony murder, only the intent to do the act which constitutes the felony in question.[51]

In this case, the act that constituted the felony was robbery. Under Neb. Rev. Stat. § 28-324 (Reissue 2016), a person commits robbery if, with the intent to steal, he or she forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever. Neb. Rev. Stat. § 28-201(1) (Cum. Supp. 2022) further provides, in relevant part, that a person is guilty of an attempt to commit a crime "if he or she . . . [i]ntentionally engages in conduct which . . . constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime."

[11,12] When a crime requires the existence of a particular intent, an alleged aider or abettor can be held criminally liable as a principal if it is shown that the aider and abettor knew that the perpetrator of the act possessed the required

---

[48] Brief for appellant at 18.

[49] *Id*. at 19.

[50] *State v. Ely*, 287 Neb. 147, 841 N.W.2d 216 (2014).

[51] *Id*.

intent or that the aider and abettor himself or herself possessed such intent.[52] The intent with which an act is committed is a mental process and may be inferred from the words and acts of the defendant and from the circumstances surrounding the incident.[53]

Viewing the evidence here in the light most favorable to the State, we conclude that there is sufficient evidence for a rational jury to conclude that Haynie had the requisite intent to rob Vasquez or to aid and abet in robbing Vasquez. There was evidence that Haynie and Mapp got into the back seat of Grim's vehicle, conduct that was not typical for drug sales conducted by Vasquez in which Grim was involved. There was also evidence that after Vasquez showed Haynie and Mapp the bag containing the marijuana and asked for payment, Haynie and Mapp both pulled out guns. Haynie then told Vasquez, "'Don't make me shoot you in front of [Grim],'" and both men "started reaching forward, trying to pull for the bag." Further, the evidence showed that two guns were fired inside the vehicle and that Grim and Vasquez were unarmed. In addition, Haynie later sent a social media message to his girlfriend contemplating another robbery.

Haynie points to evidence that he claims was inconsistent with a robbery. For example, he argues that the digital scale found at the scene "can be presumed to be [his]" and shows that he "had no intent to rob, because he intended to weigh the marijuana to confirm the sale."[54] Haynie also points to the absence of any evidence that Haynie anticipated Mapp would attempt to rob Vasquez, and he claims that the marijuana and cartridge casing found on his seat suggest he exited the vehicle before the shots were fired. Haynie argues that these

---

[52] See *State v. Barfield*, 272 Neb. 502, 723 N.W.2d 303 (2006), *disapproved on other grounds, State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[53] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[54] Brief for appellant at 17.

and other matters raised doubt about whether there was a robbery and his role in it. The jury heard the evidence and voted to convict Haynie. It is not our role to resolve any alleged conflicts in the evidence or reweigh the evidence.[55]

## CONCLUSION

The district court did not err in overruling Haynie's motion for a mistrial, in not polling the jury regarding the memorial T-shirt and not admonishing the jury to disregard that display, and in declining to give Haynie's proposed jury instruction. The evidence was also sufficient to support Haynie's murder conviction. As such, we affirm Haynie's convictions and sentences.

Affirmed.

---

[55] See *Npimnee, supra* note 5.