Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/12/2024 09:09 AM CDT

State of Nebraska, appellee, v.
Daniel Dejaynes-Beaman, appellant.

___ N.W.3d ___

Filed July 12, 2024.    No. S-23-974.

1.  **Constitutional Law: Sentences.** Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law.
2.  **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.
3.  **Sentences: Appeal and Error.** Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits.
4.  **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
5.  **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.
6.  **Sentences.** In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.
7.  ____. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Douglas County, TODD O. ENGLEMAN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, John J. Jedlicka, and Rebecca A. McClung for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

HEAVICAN, C.J., CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

Pursuant to a plea agreement, Daniel Dejaynes-Beaman entered no contest pleas to charges of second degree murder and use of a deadly weapon other than a firearm to commit a felony. The district court accepted Dejaynes-Beaman's pleas and sentenced him to 65 years' to life imprisonment on the second degree murder conviction and 40 to 50 years' imprisonment on the use of a deadly weapon conviction with the sentences to run consecutively. Dejaynes-Beaman, who was 18 years old at the time of his offenses, now argues on appeal that his sentences were unconstitutional and otherwise an abuse of the district court's discretion. We find no merit to his arguments and therefore affirm.

## BACKGROUND

*Dejaynes-Beaman's Pleas and Convictions.*

The charges in this case arose out of the death of Jolene Harshbarger. Harshbarger was found dead in her Omaha, Nebraska, residence. An autopsy concluded that her death was caused by 12 stab wounds. The autopsy also revealed proof of vaginal penetration and injury.

Law enforcement investigating Harshbarger's death learned that Dejaynes-Beaman, then 18 years of age, had recently come to Omaha from Texas and had met Harshbarger in the days leading up to her death. Video evidence collected from the night before Harshbarger's body was discovered

showed Dejaynes-Beaman walking to Harshbarger's residence and returning to the place where he had been staying. In an interview with law enforcement, Dejaynes-Beaman confessed to going to Harshbarger's residence, engaging in sexual intercourse with her, and then stabbing her multiple times with a knife.

The State initially charged Dejaynes-Beaman with first degree murder and use of a deadly weapon other than a firearm to commit a felony, but the parties later entered a plea agreement whereby Dejaynes-Beaman agreed to plead no contest to charges of second degree murder and use of a deadly weapon other than a firearm to commit a felony. At the plea hearing, the State provided a factual basis for the pleas that included the information summarized above regarding Dejaynes-Beaman's role in Harshbarger's death. Dejaynes-Beaman did not object to the State's factual basis. After the district court accepted Dejaynes-Beaman's pleas, it ordered the preparation of a presentence investigation report (PSR) and set the matter for a separate sentencing hearing.

*Sentencing.*

At the sentencing hearing, the district court stated that it had received and reviewed the PSR along with a letter from Dejaynes-Beaman's counsel, a letter from Dejaynes-Beaman's sister, and a psychological evaluation of Dejaynes-Beaman completed by Dr. Kirk Newring. Consistent with the request of Dejaynes-Beaman's counsel, the district court made the letters and psychological evaluation part of the PSR.

The letter from Dejaynes-Beaman's counsel argued that the district court should consider various mitigating factors in sentencing Dejaynes-Beaman, many of which were drawn from the letter of Dejaynes-Beaman's sister and Newring's psychological evaluation. In her letter, Dejaynes-Beaman's sister discussed Dejaynes-Beaman's difficult childhood. She reported that she and Dejaynes-Beaman grew up in extreme poverty and that their parents were addicted to methamphetamine

and physically abused Dejaynes-Beaman, his siblings, and each other. She also stated that Dejaynes-Beaman was bullied by other children and that he suffered a number of head injuries as a child. In his evaluation, Newring opined that Dejaynes-Beaman did not have "a childhood or adolescence that equipped him for adulthood." Newring also referenced scientific literature asserting that the regions of the brain responsible for impulse control and risk evaluation are not yet fully formed at age 18. Newring claimed that the research relating to adolescent brain development would suggest that, as compared to a mature adult, Dejaynes-Beaman would be impulsive and less appreciative of dangers and risk.

In the letter to the district court and at the sentencing hearing, Dejaynes-Beaman's counsel referenced the U.S. Supreme Court's opinion in *Miller v. Alabama*, a case in which the Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Dejaynes-Beaman's counsel acknowledged that the protections of *Miller* apply only to those under 18 years of age at the time of their offense but argued that the district court should still consider Dejaynes-Beaman's age and brain development when sentencing him.

Prior to imposing the sentences, the district court stated that it had reviewed the PSR and considered the factors set forth in Neb. Rev. Stat. § 29-2260 (Reissue 2016), as well as Dejaynes-Beaman's "age, mentality, education and experience, social and cultural background, past criminal record, a record of law abiding conduct[,] [t]he motivation for the offense, the nature of the offense, [and the] amount of any violence involved in the . . . offense." The district court sentenced Dejaynes-Beaman to a term of 65 years' to life imprisonment for the second degree murder conviction and a term of 40 to 50 years' imprisonment for the use of a deadly weapon conviction. The district court also granted Dejaynes-Beaman credit

for time he had already served and ordered the sentences to run consecutively.

Dejaynes-Beaman timely appealed.

## ASSIGNMENTS OF ERROR

Dejaynes-Beaman does not challenge his convictions on appeal and instead assigns errors regarding only his sentences. He claims that his sentences were (1) unconstitutional and (2) an abuse of the district court's discretion.

## STANDARD OF REVIEW

[1,2] Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law. *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

[3,4] Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within the statutory limits. *State v. Johnson*, 308 Neb. 331, 953 N.W.2d 772 (2021). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

*Dejaynes-Beaman's Sentences*
*Were Not Unconstitutional.*

We begin our analysis with Dejaynes-Beaman's contention that his sentences were unconstitutional. Dejaynes-Beaman argues that because he was only 18 years old at the time of his offenses and because his sentences amount to what he characterizes as a "de facto life sentence," the sentences imposed on him were unconstitutional. Brief for appellant at 17.

In arguing that his sentences were unconstitutional, Dejaynes-Beaman references the U.S. Supreme Court's opinion in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d

407 (2012). As he did in the district court, Dejaynes-Beaman appears to acknowledge on appeal that the rule recognized by the U.S. Supreme Court in *Miller* applies to those who were under 18 years of age at the time of their offenses. At the same time, however, he states that he should have been "afforded the protections of *Miller*." Brief for appellant at 21. In support of this assertion, Dejaynes-Beaman points out that Nebraska law generally treats persons under 19 years of age as minors. See Neb. Rev. Stat. § 43-2101 (Cum. Supp. 2022). He also cites to cases from other states that have, as a matter of state constitutional law, extended the rule recognized in *Miller* to offenders who have reached the age of 18 at the time of their offenses. See, e.g., *Matter of Monschke*, 197 Wash. 2d 305, 482 P.3d 276 (2021).

To the extent Dejaynes-Beaman is asking us to expand the rule established in *Miller* to those who are 18 years of age and older, we decline. We have previously rejected the argument that because persons under age 19 are generally considered to be "minors" in Nebraska, *Miller* should apply to an offender who was 18 years old when the offender committed his or her offense. See *State v. Wetherell*, 289 Neb. 312, 855 N.W.2d 359 (2014), *disapproved on other grounds, State v. Goynes*, 293 Neb. 288, 876 N.W.2d 912 (2016). Neither are we inclined to expand the rule the U.S. Supreme Court announced in *Miller* as a matter of state constitutional law.

That said, we see little need to devote significant discussion to whether the *Miller* rule ought to apply to Dejaynes-Beaman because, even if it did, there would have been no *Miller* violation. As mentioned above, *Miller* held that "*mandatory life without parole* [sentences] for those under the age of 18 at the time of their crimes" violated the Eighth Amendment. 567 U.S. at 465 (emphasis supplied). Not only was Dejaynes-Beaman not under age 18 at the time of his offenses, he did not receive a mandatory life without parole sentence. Second degree murder is a Class IB felony, punishable by a minimum term of 20 years' imprisonment and a maximum term of life

imprisonment. See Neb. Rev. Stat. §§ 28-105 (Cum. Supp. 2022) and 28-304 (Reissue 2016). Use of a deadly weapon, other than a firearm, to commit a felony is a Class II felony punishable by a minimum term of 1 year's imprisonment and a maximum of 50 years' imprisonment. See § 28-105 and Neb. Rev. Stat. § 28-1205 (Reissue 2016).

The district court thus had discretion to impose a lesser punishment than life without parole. Even when *Miller* applies, that is all it requires. As the U.S. Supreme Court has since clarified, "[i]n a case involving an individual who was under 18 when he or she committed a homicide, a State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient." *Jones v. Mississippi*, 593 U.S. 98, 105, 141 S. Ct. 1307, 209 L. Ed. 2d 390 (2021).

The U.S. Supreme Court's opinion in *Jones v. Mississippi* also makes clear that Dejaynes-Beaman's characterization of his sentences as a "de facto life sentence," see brief for appellant at 17, is irrelevant to his constitutional argument. Following *Miller, supra*, some courts concluded that "*Miller*'s principles are fully applicable to a lengthy term-of-years sentence," sometimes termed a "de facto life sentence." See, e.g., *State v. Null*, 836 N.W.2d 41, 72 (Iowa 2013). But even assuming a term-of-years sentence for a juvenile can reach a length at which it becomes a de facto life-without-parole sentence, *Jones v. Mississippi* held that a sentencing court may, consistent with the Eighth Amendment, impose an actual life-without-parole sentence so long as the sentencing court retains discretion to impose a lesser penalty. It follows that, so long as the sentencing judge has discretion to consider a juvenile offender's youth and impose a lesser sentence, there is no *Miller* violation if a court imposes what may amount to a de facto life sentence. Many other courts have relied on *Jones v. Mississippi* to reach that conclusion. See, e.g., *U.S. v. Grant*, 9 F.4th 186 (3d Cir. 2021); *People v. Wilson*, 2023 IL 127666, 220 N.E.3d 1068, 468 Ill. Dec. 289 (2023); *Commonwealth v. Felder*, 269 A.3d 1232 (Pa. 2022); *Williams v. State*, 314 Kan.

466, 500 P.3d 1182 (2021). See, also, *State v. Cardeilhac*, 293 Neb. 200, 876 N.W.2d 876 (2016) (concluding, pre-*Jones v. Mississippi*, that even if *Miller* applied to lengthy term-of-years sentence, no *Miller* violation occurred because sentencing hearing complied with *Miller*).

Finally, we note that the weakness of Dejaynes-Beaman's constitutional argument is demonstrated by the relief he seeks. He argues that we should vacate his sentences and order a resentencing hearing at which relevant mitigating circumstances, presumably his age and qualities related thereto, could be considered. But Dejaynes-Beaman already received as much. The district court received the PSR, which included the letter from Dejaynes-Beaman's sister recounting his difficult childhood, as well as Newring's evaluation in which he opined that, because of Dejaynes Beaman's age and brain development, he did not have the impulse control or ability to appreciate risk that a mature adult would have. There is nothing in the record to suggest that the district court did not consider those materials in addition to Dejaynes-Beaman's age and experience in determining his sentences. The district court thus already did what Dejaynes-Beaman contends is constitutionally required. We find no basis to conclude Dejaynes-Beaman's sentences were unconstitutional.

*Dejaynes-Beaman's Sentences Were*
*Not an Abuse of Discretion.*

This leaves Dejaynes-Beaman's argument that the district court abused its discretion in sentencing him. Dejaynes-Beaman does not dispute that his sentences were within statutory limits, but argues that the district court failed to consider all of the mitigating information in the sentencing record.

[5-7] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence

to be imposed. *State v. Stack*, 307 Neb. 773, 950 N.W.2d 611 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Dejaynes-Beaman argues that the district court did not consider the factors enumerated above, particularly those factors that pertain to his life experience. In arguing that the district court did not consider his life experience, Dejaynes-Beaman specifically highlights the letters submitted by his sister and Newring. Those letters reveal an undoubtedly difficult childhood in which Dejaynes-Beaman lived in extreme poverty, was exposed to drug use due to his parents' addictions, was physically abused by his parents, suffered various incidents of head trauma, began abusing illegal drugs himself at a young age, and developed various mental health issues. Dejaynes-Beaman argues that if the district court had truly considered what he experienced in his childhood, along with his minimal criminal history, it would have imposed substantially shorter sentences.

We disagree that the district court abused its discretion in sentencing Dejaynes-Beaman. Although Dejaynes-Beaman argues that the district court did not consider his life experience, the record does not support his assertion. It appears Dejaynes-Beaman's true objection to his sentences is not that the district court did not consider the mitigating information he offered, but that it should have weighed the relevant sentencing factors differently. We recall, however, that it is not our function to conduct a de novo review of the record

to determine what sentence we would impose, see *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024), and that the district court was also obligated to consider the nature of Dejaynes-Beaman's murder of Harshbarger. With those considerations in mind, we cannot say the district court abused its discretion in sentencing Dejaynes-Beaman.

## CONCLUSION

We find no error in Dejaynes-Beaman's sentences. We therefore affirm.

Affirmed.

Miller-Lerman, J., participating on briefs.