Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/01/2026 08:11 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
MARIANO FLORES, APPELLANT.
___ N.W.3d ___

Filed May 1, 2026.    No. S-25-003.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.

3. **Judgments: Sentences: Words and Phrases: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. **Constitutional Law: Sentences: Appeal and Error.** Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law, which an appellate court resolves independently of the lower court's decision.

5. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.

6. **Jury Instructions: Appeal and Error.** It is not error for a trial court to refuse to give a party's requested instruction where the substance of the requested instruction was covered in the instructions given.

7. **Jury Instructions.** An instruction which is likely to confuse or mislead the jury should not be given.

8. **Criminal Law: Jury Instructions.** Requiring the court to inform the jury of all actions that do not constitute a crime would be impossible and inefficient.

9. \_\_\_\_: \_\_\_\_. When there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that instruction to the jury in a criminal case.

10. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.

11. **Sentences.** When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

12. \_\_\_\_. A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

13. \_\_\_\_. A sentence should be tailored and based on factors that fit the offender and not merely the crime.

14. **Constitutional Law.** The 14th Amendment to the U.S. Constitution applies to the states the restrictions from the 8th Amendment.

15. **Constitutional Law: Sentences.** A sentencing court may, consistent with the Eighth Amendment, impose an actual life-without-parole sentence so long as the sentencing court retains discretion to impose a lesser penalty.

16. **Constitutional Law: Minors: Sentences.** So long as the sentencing judge has discretion to consider a juvenile offender's youth and impose a lesser sentence, there is no constitutional violation if a court imposes what may amount to a de facto life sentence.

Appeal from the District Court for Douglas County: Todd O. Engleman, Judge. Affirmed.

Kenneth Jacobs, of Hug and Jacobs, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Bergevin, J.

## I. INTRODUCTION

A jury found Mariano Flores guilty of multiple felony offenses, including murder in the first degree, a Class IA felony[1]; robbery, a Class II felony[2]; and use of a deadly weapon (firearm) to commit a felony, a Class IC felony.[3] The district court sentenced Flores to a total term of 320 years' to life imprisonment. This appeal comes to us on direct review due to Flores' life sentence.[4] Flores challenges the sufficiency of the evidence related to certain offenses. He also contends that the district court erred by not giving a jury instruction he requested and by imposing excessive sentences. We affirm.

## II. BACKGROUND

This matter is a companion case to *State v. White*.[5] Flores and Quan A. White were codefendants in the same jury trial. The charges against Flores and White arose from a series of events that transpired over several days in June 2021.

On the evening of June 13, 2021, Flores, White, and Nowa Kawunda, all juveniles at the time, went to a public pool after closing hours with several other people. Emmanuel Jacinto Franco drove the group to the pool in a vehicle.

While the group was at the pool, Flores asked Kawunda to take Flores' phone and charge it in Jacinto Franco's vehicle. Subsequently, in Flores' presence, White told Kawunda that

---

[1] See Neb. Rev. Stat. § 28-303 (Cum. Supp. 2024).

[2] Neb. Rev. Stat. § 28-324 (Reissue 2016).

[3] Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016).

[4] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2024).

[5] *State v. White, ante* p. 1, 32 N.W.3d 256 (2026).

"we're going to rob him," referring to Jacinto Franco. White gave Kawunda a handgun. Kawunda took Flores' phone and concealed the handgun under his clothes.

Kawunda obtained Jacinto Franco's permission to charge Flores' phone in the vehicle, and the two walked to the vehicle in the pool's parking lot. Jacinto Franco plugged Flores' phone into the charger inside the vehicle. Kawunda then took out White's handgun, pointed it at Jacinto Franco, and demanded the keys to the vehicle. Jacinto Franco initially refused. In response, Kawunda struck Jacinto Franco with the handgun and forced him to start the vehicle.

After Jacinto Franco started the vehicle, Flores and White climbed over the pool fence and got into the vehicle with Kawunda. The three drove off in the vehicle, leaving Jacinto Franco behind.

Over the course of the next 3 days, Flores, White, and Kawunda acquired additional firearms. On June 16, 2021, the group drove the vehicle to a bar. They intended to shoot at people affiliated with the Crips gang who were gathered at the bar. The group drove past the bar and discharged their firearms into a crowd of people standing outside. One person was killed, and another was seriously injured.

Flores, White, and Kawunda then drove the vehicle to a housing complex to "look[] for Crips." They identified a person in the parking lot whom they believed to be affiliated with the Crips gang. They parked, exited the vehicle, and proceeded to discharge their firearms at the individual. The individual and the occupant of a nearby apartment suffered minor injuries. Flores, White, and Kawunda left the housing complex in the vehicle.

The group stole another vehicle on the morning of June 17, 2021. The owner of the stolen vehicle assisted law enforcement by remotely tracking it, and law enforcement apprehended Flores, White, and Kawunda later that day.

## 1. Prosecution

A joined jury trial was held for Flores and White. Flores was charged by a third amended information with robbery, a Class II felony[6]; murder in the first degree, a Class IA felony[7]; assault in the first degree, a Class II felony[8]; two counts of discharging a firearm at an inhabited house, occupied building, or occupied motor vehicle, a Class ID felony[9]; theft by receiving stolen property, $5,000 or more, a Class IIA felony[10]; and five counts of use of a deadly weapon (firearm) to commit a felony, a Class IC felony.[11]

At trial, the State called 37 witnesses who testified about the events recounted above. The State also adduced evidence about the law enforcement investigation that followed, including the results of DNA testing and firearms analysis. Neither Flores nor White testified in their defense.

During trial, the State argued that Flores could be guilty of robbery and the related use of a firearm to commit a felony under an aiding and abetting theory. At the jury instruction conference, Flores objected to proposed instruction No. 15, which followed the language for aiding and abetting a crime in the Nebraska Jury Instructions.[12] Instruction No. 15 provided:

> The Defendant, . . . Flores, can be guilty of a crime even though he personally did not commit every act involved in the crime so long as he aided someone else to commit it. The Defendant, . . . Flores, aided someone else if:

---

[6] See § 28-324.

[7] See § 28-303.

[8] See Neb. Rev. Stat. § 28-308 (Reissue 2016).

[9] See Neb. Rev. Stat. § 28-1212.02 (Reissue 2016).

[10] See Neb. Rev. Stat. §§ 28-517 and 28-518(1) (Reissue 2016).

[11] See § 28-1205(1)(c).

[12] See NJI2d Crim. 3.8.

(1) The Defendant intentionally encouraged or intentionally helped another person to commit the crime; and

(2) The Defendant intended that the crime be committed; or the Defendant knew that the other person intended to commit the crime; and

(3) The crime in fact was committed by that other person.

Flores submitted a proposed jury instruction, which added the following sentence to the end of instruction No. 15: "Evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving the Defendant's guilt." The district court overruled Flores' objection and did not give his proposed instruction to the jury.

The jury found Flores guilty on all counts. The district court accepted the jury's verdicts, ordered a presentence investigation report (PSR), and scheduled the matter for sentencing.

## 2. Sentencing

At the outset of the sentencing hearing, the district court noted that it had reviewed the PSR, which contained a forensic evaluation of Flores. The forensic evaluation included interviews with Flores' family and the results of various psychological tests of Flores, along with a review of relevant scientific research and literature. The forensic evaluation also addressed Flores' prenatal history, developmental history, medical history, substance abuse treatment history, social history, and psychological history. The evaluation discussed the circumstances of the offenses, Flores' family and home environment, and his age and characteristics, as well as his prospects for rehabilitation.

During the sentencing hearing, Flores' trial counsel stressed that Flores was 15 years old at the time of the crimes, had "done quite a bit of reflection on what lead [sic] him to be incarcerated," and asked the Court to consider imposing a sentence that would not amount to a de facto life sentence.

Trial counsel emphasized the forensic evaluation showed that Flores had an unstable home life and that he associated with "the wrong group of individuals" before his incarceration. Trial counsel also noted that the forensic evaluation cited studies concluding most people who are violent in their adolescence do not persist in that behavior and that Flores was amenable to programming. As an example, trial counsel explained that Flores was awarded a diploma while awaiting trial at a youth center.

The State disagreed that Flores was amenable to rehabilitation. The State pointed the court to Flores' lack of cooperation with probation in the preparation of the PSR. The State referenced Flores' refusal to admit that he was involved with a gang, his lack of regret for his choice in peers, his lack of interest in seeking rehabilitation, and his failure to take responsibility or accountability for his actions. The State also pointed to the serious nature of the offenses and emphasized that Flores' actions were not during an impulsive few minutes but over the course of several days.

The district court again stated that it had reviewed the PSR and that it had considered the sentencing factors laid out in Neb. Rev. Stat. § 29-2260 (Reissue 2016), as well as Flores' age, mentality, education, experience, social and cultural background, and past criminal record or record of law abiding conduct; the motivation for the offenses and nature of the offenses; and the amount of violence, if any, involved in the commission of the offenses. The court also noted that it had read through the forensic evaluation "a couple of times."

Before imposing its sentences, the district court stated, "Going th[r]ough these[,] these are some of the most brutal crimes perpetrated on people. I think it's important to remember when I impose a sentence[,] which is going to be the same sentence that I gave to [White]."

The district court imposed the same sentences that it had previously given White, a total term of 320 years' to life

imprisonment. The court ordered the sentences to run consecutively and gave Flores credit for time served.

Each individual sentence imposed was within statutory limits. The court sentenced Flores to a period of 30 to 50 years' imprisonment for robbery; 40 years' to life imprisonment for murder in the first degree; 30 to 50 years' imprisonment for assault in the first degree; 30 to 50 years' imprisonment for each count of discharging a firearm at an inhabited house, occupied building, or occupied motor vehicle; 10 to 20 years' imprisonment for theft by receiving stolen property, $5,000 or more; and 30 to 50 years' imprisonment for each count of use of a firearm to commit a felony.

Flores filed a timely appeal.

### III. ASSIGNMENTS OF ERROR

Flores assigns, restated, that the district court erred by (1) accepting the jury's verdict when the evidence was insufficient to support his convictions for robbery and use of a firearm to commit a felony, (2) not adopting Flores' proposed jury instruction on aiding and abetting, and (3) abusing its discretion when it imposed excessive sentences on Flores that constituted cruel and unusual punishment, in violation of the Eighth Amendment to the U.S. Constitution.

### IV. STANDARD OF REVIEW

[1] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[13]

[2] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[14]

---

[13] *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025).

[14] *State v. Logan*, 320 Neb. 554, 28 N.W.3d 510 (2025).

[3] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[15] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[16]

[4] Whether a sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment presents a question of law, which an appellate court resolves independently of the lower court's decision.[17]

## V. ANALYSIS

First, we address Flores' assignment of error concerning the sufficiency of the evidence relating to his robbery and use of a firearm to commit a felony convictions. We then address the district court's refusal to adopt Flores' proposed jury instruction on aiding and abetting. Finally, we address Flores' assignment that the district court abused its discretion in imposing excessive sentences that amounted to cruel and unusual punishment.

### 1. Sufficiency of Evidence

Flores first contends that the evidence at trial was insufficient to convict him of robbery and use of a firearm to commit that felony. We disagree.

The question before us is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of these two crimes beyond a reasonable doubt.[18]

Flores points to several facts to show that the evidence was insufficient to sustain his convictions for robbery and use of a firearm to commit a felony: namely, that White, not Flores, mentioned robbing Jacinto Franco to Kawunda and provided

---

[15] *State v. Sutton*, 319 Neb. 581, 24 N.W.3d 43 (2025).

[16] *Id.*

[17] *State v. Ezell*, 314 Neb. 825, 993 N.W.2d 449 (2023).

[18] See *State v. Rupp, supra* note 13.

the handgun used in the robbery; that Kawunda, not Flores, robbed Jacinto Franco of the vehicle; that Flores did not use the handgun in the robbery; and that Flores did not enter Jacinto Franco's vehicle until after it had been stolen. Flores also argues that the evidence fails to establish that he knew of or saw the handgun at the time of the robbery. Flores argues that the State did not prove the elements of robbery in his case and that, as a result, he cannot be guilty of use of a firearm to commit the robbery.

The State contends that the evidence was sufficient to convict Flores of both offenses under an aiding and abetting theory. The State points to Neb. Rev. Stat. § 28-206 (Reissue 2016), which provides that "[a] person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he [or she] were the principal offender." We have recognized that this statute abolishes the common-law distinction between a principal and an aider and abettor.[19]

The State argues that the evidence shows that "Flores, White, and Kawunda all discussed stealing Jacinto[ ]Franco's vehicle."[20] The State notes that during this discussion, Flores gave Kawunda his phone, "which Kawunda used as a ruse . . . for Kawunda to complete the robbery,"[21] and that White handed Kawunda a handgun in Flores' presence. Additionally, the State notes that Flores and White, who were still within the pool's fence at the time Kawunda got the vehicle started, "hopped" the fence to get in the vehicle and drove off.[22]

It is immaterial whether Flores personally robbed Jacinto Franco, so long as he aided or abetted Kawunda in committing the robbery. After viewing the evidence in the light most favorable to the State, we determine that any rational trier of fact could have found that Flores aided Kawunda by

[19] *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023).

[20] Brief for appellee at 20.

[21] *Id.*

[22] *Id*. at 9.

intentionally encouraging or intentionally helping Kawunda to commit the crimes of robbery and use of a firearm to commit a felony, and by intending that the crimes be committed or by knowing that Kawunda intended to commit the crimes.

Flores' convictions for robbery and use of a firearm to commit a felony are supported by sufficient evidence.

## 2. Jury Instruction

Flores contends that the district court erred by not including his proposed language concerning "mere presence" in jury instruction No. 15. We disagree.

[5] To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction.[23]

Flores contends his proposed instruction was a correct statement of the law based on this court's opinion in *State v. Ramsay*,[24] wherein we stated that evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving guilt under an aiding and abetting theory. Flores also contends that his tendered instruction was warranted by the evidence because Kawunda took the vehicle and White provided Kawunda the firearm, while Flores did neither. Lastly, Flores asserts that the district court's refusal to give his proposed jury instruction prejudiced him because he was unable to argue that his mere presence in the vehicle before and after the robbery was insufficient to convict him of the robbery.

The State argues that jury instruction No. 15 follows NJI2d Crim. 3.8, which adequately addresses Flores' concerns. Additionally, the State argues that Flores' argument is

---

[23] *State v. Logan, supra* note 14.

[24] *State v. Ramsay*, 257 Neb. 430, 598 N.W.2d 51 (1999).

comparable to an argument raised in *State v. Haynie*,[25] which we rejected.

[6-8] We agree with the State that Flores' argument is nearly identical to an argument we rejected in *Haynie*. In *Haynie*, the appellant proposed a jury instruction that would have added language concerning "'mere presence'" to a jury instruction that was based on NJI2d Crim. 3.8.[26] We noted that it is not error for a trial court to refuse to give a party's requested instruction where the substance of the requested instruction was covered in the instructions given.[27] We also noted that a "'mere presence'" instruction would have confused and misled the jury because "'it is impossible for jury instructions to include everything that does not constitute aiding and abetting.'"[28] An instruction which is likely to confuse or mislead the jury should not be given.[29] Further, requiring the court to inform the jury of all actions that do not constitute a crime would be impossible and inefficient.[30]

Although we have used Flores' proposed language about "mere presence" in *Ramsay* and related cases, we use that language when summarizing the law as to aiding and abetting.[31] However, we have not suggested that this language should be included in jury instructions.[32]

[9] In this case, the district court's jury instruction followed the language of the NJI2d Crim 3.8 for aiding and abetting a crime. When there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that

---

[25] *State v. Haynie*, 317 Neb. 371, 9 N.W.3d 915 (2024).

[26] See *id*. at 387, 9 N.W.3d at 926.

[27] *State v. Haynie, supra* note 25.

[28] *Id*. at 387, 9 N.W.2d at 926 (quoting *State v. Glantz*, 251 Neb. 947, 560 N.W.2d 783 (1997)).

[29] See *Haynie, supra* note 25.

[30] *Glantz, supra* note 28.

[31] See, *Haynie,* supra note 25; *Ramsay, supra* note 24.

[32] See *id.*

instruction to the jury in a criminal case.[33] Because Flores' additional proposed language was likely to confuse or mislead the jury, he was not prejudiced by the court's refusal to give the instruction.

The district court did not err in refusing to give Flores' proposed jury instruction.

### 3. Imposed Sentences

Flores next contends that the district court abused its discretion by imposing excessive sentences that constituted cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. We disagree.

### (a) Excessive Sentences

[10] The sentences imposed by the district court for each conviction were within the respective statutory limits. Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed.[34]

[11] When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.[35]

[12,13] A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding

---

[33] *Id.*

[34] See *State v. Ezell, supra* note 17.

[35] *Id.*

the defendant's life.[36] A sentence should be tailored and based on factors that fit the offender and not merely the crime.[37]

Flores was convicted of a Class IA felony for the offense of murder in the first degree, and he was under the age of 18 when he committed that offense. Thus, the district court was obligated to consider the mitigating factors listed in Neb. Rev. Stat. § 28-105.02(2) (Reissue 2016), which section provides, in relevant part:

In determining the sentence of a convicted person [who was under the age of 18 at the time of the offense], the court shall consider mitigating factors which led to the commission of the offense. The convicted person may submit mitigating factors to the court, including, but not limited to:

(a) The convicted person's age at the time of the offense;

(b) The impetuosity of the convicted person;

(c) The convicted person's family and community environment;

(d) The convicted person's ability to appreciate the risks and consequences of the conduct;

(e) The convicted person's intellectual capacity; and

(f) The outcome of a comprehensive mental health evaluation of the convicted person conducted by an adolescent mental health professional licensed in this state. The evaluation shall include, but not be limited to, interviews with the convicted person's family in order to learn about the convicted person's prenatal history, developmental history, medical history, substance abuse treatment history, if any, social history, and psychological history.

Flores argues that the district court did not make an individualized sentencing decision as required by section § 28-105.02

---

[36] *State v. Jones*, 318 Neb. 840, 19 N.W.3d 499 (2025).

[37] *State v. Ezell, supra* note 17.

because it stated on the record, "I think it's important to remember when I impose a sentence[,] which is going to be the same sentence that I gave to [White]." The State argues that the factors listed under § 28-105.02(2) were included in the forensic evaluation of Flores, which the district court received and stated it considered.

We recognize that the district court referenced White's sentences at Flores' sentencing hearing. But the fact that the court imposed the same sentences on Flores and White does not, by itself, establish that the court did not make an individualized sentencing decision with regard to Flores.

The record refutes Flores' assertion that his sentences were excessive. The district court stated that it reviewed the PSR and the sentencing factors set forth in § 29-2260, as well as Flores' age, mentality, education, experience, social and cultural background, and past criminal record or record of law abiding conduct; the motivation for the offenses and nature of the offenses; and the amount of violence, if any, involved in the commission of the offenses. Although the district court did not expressly mention § 28-105.02, all of the statutory mitigating factors were included in the forensic evaluation that Flores provided the court, which the court stated it considered.

The district court did not abuse its discretion in sentencing Flores.

### (b) Cruel and Unusual Punishment

Flores also contends that the district court's sentences violate the prohibition against cruel and unusual punishment in the Eighth Amendment to the U.S. Constitution because, despite being to incarceration for a term of years to life imprisonment, they amount to a de facto life sentence. Flores acknowledges that this court has previously heard similar arguments and rejected the same,[38] but argues that we should

---

[38] See, e.g., *State v. Ramirez*, 314 Neb. 419, 990 N.W.2d 550 (2023); *State v. Jones*, 297 Neb. 557, 900 N.W.2d 757 (2017); *State v. Cardeilhac*, 293 Neb. 200, 876 N.W.2d 876 (2016).

rule differently in his case because his aggregate sentence is longer than those we have previously affirmed.[39]

[14] The Eighth Amendment to the U.S. Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The 14th Amendment applies those restrictions to the states.[40] Article I, § 9, of the Nebraska Constitution uses identical language to the cruel and unusual punishment clause in the Eighth Amendment to the U.S. Constitution.

[15,16] We have recognized that a sentencing court may, consistent with the Eighth Amendment, impose an actual life-without-parole sentence so long as the sentencing court retains discretion to impose a lesser penalty.[41] In *State v. Dejaynes-Beaman*,[42] we concluded that so long as the sentencing judge has discretion to consider a juvenile offender's youth and impose a lesser sentence, there is no constitutional violation if a court imposes what may amount to a de facto life sentence.

We are unpersuaded by Flores' argument that his sentences violate the Eighth Amendment. Here, the district court had the discretion to impose a lesser penalty than life imprisonment without the possibility of parole for each individual offense of which Flores was convicted. While Flores' total sentence may be a de facto life sentence, it does not constitute cruel and unusual punishment.

---

[39] See, *State v. Dejaynes-Beaman*, 317 Neb. 131, 8 N.W.3d 779 (2024) (juvenile defendant sentenced to term of 105 years' to life imprisonment); *Ramirez, supra* note 38 (defendant, who was juvenile at time of offense, was resentenced to term of 128 to 180 years' imprisonment); *Jones, supra* note 38 (defendant, who was juvenile at time of offense, was resentenced to 80 years' to life imprisonment); *Cardeilhac, supra* note 38 (juvenile defendant sentenced to 60 years' to life imprisonment).

[40] *State v. Trail*, 312 Neb. 843, 981 N.W.2d 269 (2022).

[41] *State v. Dejaynes-Beaman, supra* note 39.

[42] *Id*.

The sentence imposed by the district court does not violate the Eighth Amendment to the U.S. Constitution.

## VI. CONCLUSION

We conclude that sufficient evidence supports Flores' convictions for robbery and use of a firearm to commit a felony and that the district court did not err in refusing to adopt Flores' proposed jury instruction on aiding and abetting or in sentencing Flores. Accordingly, we affirm the judgment and sentences of the district court.

Affirmed.