IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. PETERSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

STORM M. PETERSON, APPELLANT.

Filed June 16, 2026.    No. A-25-709.

Appeal from the District Court for Box Butte County: TRAVIS P. O'GORMAN, Judge. Affirmed.

Jerrod Jaeger, of Jaeger Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellant.

MOORE, PIRTLE, and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Storm M. Peterson appeals from his conviction and sentence following a jury trial in the district court for Box Butte County for one count of third degree sexual assault of a child. Peterson argues that the district court imposed an excessive sentence and that he received ineffective assistance of trial counsel. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

On November 8, 2024, the State filed an information in the district court, charging Peterson with two counts of third degree sexual assault of a child. The State alleged that Peterson, a person at least 19 years of age or older, subjected J.M., a person 14 years of age or younger, to sexual contact on October 11 and again on October 12.

- 1 -

A jury trial was held on June 4, 2025. The State presented testimony from J.M., her mother, and two police officers who investigated this case. The State offered and the district court received copies of text messages exchanged by Peterson and J.M.'s mother on October 12, 2024, after the incident in question, and body camera footage of the police contact with Peterson that evening. Peterson testified on his own behalf. He also presented testimony from his former wife (from a marriage prior to his marriage to J.M.'s mother).

The evidence shows that Peterson was born in 1990, and J.M. was 12 years old at the time of the events in question. Peterson and J.M.'s mother were married at the time of the events in question, but they have since divorced.

J.M. testified that on the evening of October 11, 2024, she was watching television upstairs in her bedroom when Peterson entered her room. According to J.M., Peterson sat on her bed and started rubbing her back before placing his hands under her shirt and rubbing "the top part" of her chest. J.M.'s mother came upstairs after a few minutes and confronted Peterson. J.M. was asked if Peterson said anything during the confrontation. She responded that Peterson asked her mother "why he can't say goodnight to his [step]daughter and why he basically couldn't come into [J.M.'s] room." J.M. testified that she did not tell anyone else about the October 11 incident because her mother "already saw what happened" and J.M. "thought that it was fine." She explained further that she did not think anything was wrong because "it didn't go as extreme as it did on [October 12]," but that by the next day, she decided that the October 11 incident "wasn't okay."

As to the October 12, 2024, incident, J.M. testified that she called the police because Peterson "had touched her." She described the October 12 incident, testifying that she was in her bedroom about to fall asleep when Peterson entered. She testified that Peterson sat on her bed and started rubbing her back. He then "went underneath [her] shirt and touched [her] chest area." She testified that Peterson also rubbed her back and arms and grabbed her thighs at some point. According to J.M., the incident lasted for 15 or 20 minutes. J.M. tried to pull the covers on top of herself and roll or squirm away from Peterson. She "eventually ran off" downstairs to tell her mother that Peterson "was touching [her]." Peterson followed, and J.M.'s mother confronted him and said she was going to call the police. According to J.M.'s mother, Peterson took her phone and threw it against the wall. J.M.'s mother was eventually able to retrieve J.M.'s phone and unobtrusively hand it to her, after which J.M. called the police.

The body camera video of Peterson's interactions with police after law enforcement responded to the residence on October 12, 2024, was played for the jury. During the video, Peterson explained that he would usually give J.M. a hug and a kiss before bed, and that if he "took it too far" that evening, he "[did] apologize." At one point in the video, Peterson yelled to J.M. that he was "sorry." Peterson's text messages to J.M.'s mother from jail that night state that he was "sorry" and that he would "change."

In his testimony, Peterson stated that he did not recall the October 11, 2024, incident. With respect to the October 12 incident, Peterson testified that he went to J.M.'s room to tell her goodnight. Peterson testified that he sat on the edge of J.M.'s bed and that he observed she "wasn't like fully awake." According to Peterson, he told J.M. goodnight and asked if she had had fun bowling earlier. When J.M. did not respond, he "went to go give her a hug and a kiss" and she "flipped out." Peterson denied touching J.M.'s breast area or placing his hands near her pants. He

testified that he might have startled J.M. and noted that J.M.'s mother once told him J.M. had night terrors when she was younger.

The jury found Peterson guilty of the charge relating to the incident on October 12, 2024, but not guilty of the charge relating to the October 11 incident. The district court accepted the jury's verdict, found Peterson guilty of one count of third degree sexual assault of a child, and ordered a presentence investigation report (PSR). Following a sentencing hearing, the court sentenced Peterson to a term of 36 months' imprisonment with credit for 4 days served. This appeal followed.

## ASSIGNMENTS OF ERROR

Peterson assigns that the district court's sentence was excessive and constituted an abuse of discretion. Now represented by different counsel, Peterson also assigns that that his trial counsel "performed deficiently and prejudiced [his] defense" by failing to (1) "interview and call specific witnesses possessing knowledge of impeachment and character evidence against [Peterson's] accusers," (2) "interview and call specific witnesses possessing knowledge of [Peterson's] character for appropriate relationships with children," and (3) "counsel and prepare [Peterson] for trial and sentencing testimony." Brief for appellant at 5.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Flores*, 321 Neb. 284, 34 N.W.3d 106 (2026). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of counsel may be determined on direct appeal is a question of law. *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance. *Id.*

Whether an assignment of error and accompanying argument is too vague to be sufficiently raised before the appellate court is a question of law. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025).

## ANALYSIS

*Excessive Sentence.*

Peterson assigns that the district court's sentence was excessive and constituted an abuse of discretion. Peterson was convicted of third degree sexual assault of a child, a Class IIIA felony, punishable by no minimum sentence and a maximum sentence of 3 years' imprisonment, followed by 0 to 18 months' post-release supervision, a $10,000 fine, or both. See Neb. Rev. Stat. § 28-320.01 (Reissue 2016); Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). The court sentenced Peterson to a term of 36 months' imprisonment with credit for 4 days served. Because the sentence imposed was within the statutory guidelines, we review the sentence only for an abuse of discretion.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors, as well as any applicable legal principles in determining the sentence to be imposed. *State v. Flores, supra*. When imposing a sentence, the sentencing court is to consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* A sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

The PSR shows that Peterson, age 35, has a high school education, is divorced, and has two dependents. He was employed at the time of the PSR. Peterson has a minimal criminal history, with only a conviction for disturbing the peace in 2013. Peterson scored in the medium low risk to reoffend category on the Level of Service/Case Management Inventory. On the "VASOR-II/SOTIPS" sex offender assessment tool, Peterson scored as a low risk to reoffend. The PSR includes the victim's report detailing the effects of Peterson's actions on her. It also includes many letters in support of Peterson.

At the sentencing hearing, the district court indicated that it had considered the remarks made at sentencing; had reviewed the PSR; and in sentencing Peterson, had considered his age, mentality, education, experience, social and cultural background, and his past criminal record. In noting Peterson's minimal criminal record, the court stated, "But with some crimes that really doesn't matter." The court also noted that Peterson "took absolutely no responsibility" in the PSR, and it found that anything less than a period of incarceration would depreciate the seriousness of the offense and promote a disrespect for the law.

Peterson argues that the court considered the nature of the crime and Peterson's denial as "the trigger to give a maximum sentence" and that the court determined the other sentencing factors did not matter. Brief for appellant at 17. We do not read the court's comments at sentencing to mean that factors such as Peterson's prior record did not matter. Peterson essentially asks this court to reweigh the sentencing factors, and we decline to do so. It is not the proper function of an appellate court to conduct a de novo review or engage in a reweighing of the sentencing factors in the record. *State v. Lopez*, 321 Neb. 118, 32 N.W.3d 868 (2026). The district court clearly took the appropriate factors into consideration when sentencing Peterson, and we find no abuse of discretion in the sentence imposed.

*Ineffective Assistance of Counsel.*

Peterson is represented by new counsel on direct appeal. In his second assignment of error, he asserts three claims of ineffective assistance of trial counsel. Before addressing Peterson's claims, we first set forth general legal principles applicable to ineffective assistance of counsel claims, as well as the requirements for raising such claims on direct appeal.

Generally, to prevail on a claim of ineffective assistance of counsel under the framework established by the U.S. Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was

deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Lopez, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* Trial counsel is afforded due deference to formulate trial strategy and tactics and, in considering a claim of ineffective assistance of counsel, there is a strong presumption that counsel acted reasonably. *Id.* An appellate court will not second-guess the reasonable strategic decisions of trial counsel. *Id.*

To show prejudice in a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability of prejudice is a probability sufficient to undermine confidence in the outcome. *Id.* In determining whether there is a reasonable probability that any deficient performance of trial counsel would have resulted in a different outcome in the proceeding, an appellate court may properly consider the strength of the admissible evidence relating to the controverted issues in the case. *Id.*

When a defendant's trial counsel is different from counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, or else the claim will be procedurally barred. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). The appellate court will determine if the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A motion for postconviction relief asserting ineffective assistance of trial counsel is procedurally barred when (1) the defendant was represented by a different attorney on direct appeal than at trial, (2) an ineffective assistance of trial counsel claim was not brought on direct appeal, and (3) the alleged deficiencies in trial counsel's performance were known to the defendant or apparent from the record. *Id.*

A generalized and vague assignment of error that does not advise an appellate court of the issue submitted for decision will not be considered. *Id.* An assignment of error is specific when it addresses a specific issue that does not require additional information to understand precisely what the assignment attacks. See *id.* A claim of ineffective assistance of trial counsel that is insufficiently stated is no different than a claim not stated at all and will not prevent the procedural bar accompanying the failure to raise all known or apparent claims of ineffective assistance of trial counsel. *Id.*

For the purpose of avoiding a procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* While a defendant with new counsel on appeal must make specific allegations of trial counsel's deficient performance known to the defendant or apparent from the record, the defendant is not required to make detailed factual allegations of prejudice to preserve a claim of ineffective assistance of trial counsel. *Id.* A specific enough description of deficient performance in the assignment of error must, standing alone, permit an appellate court to determine if the claim can be decided upon the trial record and permit a district court to later recognize if the claim was brought before the appellate court. *Id.* The argument section of the brief

is to elaborate on the ineffective assistance of counsel claims by discussing legal authority and its application to the trial record, not to set forth, for the first time, the allegedly deficient act. *Id.*

In his first two claims of ineffective assistance of trial counsel, Peterson asserts that his counsel "performed deficiently and prejudiced [his] defense" by failing to "interview and call specific witnesses" possessing knowledge of "impeachment and character evidence against [Peterson's] accusers" and knowledge of his "character for appropriate relationships with children." Brief for appellant at 5. When the claim of ineffective assistance on direct appeal involves uncalled witnesses, the defendant must give the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel; what the witness would have said may be part of the witness' description when the name is unknown. *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). Peterson's assignment of error does not give the names of the uncalled witnesses. Although Peterson gives the names of the "specific" uncalled witnesses in the argument section of his brief, he did not describe these witnesses with sufficient particularity in his assignments of error as required. Peterson's first two claims are insufficiently stated.

In his third claim, Peterson asserts that his trial counsel "performed deficiently and prejudiced [his] defense" by failing to "counsel and prepare [Peterson] for trial and sentencing testimony." Brief for appellant at 5. This claim is also insufficiently stated. Any claim of ineffective assistance of counsel alleging deficient conduct must be more specific than generalities of inadequate preparation or failures to introduce beneficial evidence. *State v. Rupp, supra*.

## CONCLUSION

The district court did not abuse its discretion in the sentence imposed. Peterson's claims of ineffective assistance of counsel are insufficiently stated. Accordingly, we affirm Peterson's conviction and sentence.

AFFIRMED.